Phillips v. 180Solutions, Inc. et al Doc. 7



Kristin L. Holland (SBN 187314)
Gregory S. Korman (SBN 216931)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
TEL: (310) 788-4400
FAX: (310) 788-4471
kristin.holland@kattenlaw.com
gregory.korman@kattenlaw.com

Floyd A. Mandell (*Pro Hac Vice Application To Be Filed)*
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe, Chicago, Illinois 60661
Telephone: 312.902.5200
Facsimile: 312.902.1061
floyd.mandell@kattenlaw.com

Attorneys for defendants Zango, Inc., 180solutions, Inc. (n/k/a Zango, Inc.), MetricsDirect (n/k/a Zango Ad Services), Keith Smith, Daniel Todd and Kenneth Smith

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

ROBIN PHILLIPS, individually and on behalf of all those similarly situated and on behalf of the general public,

Plaintiffs,

vs.

180SOLUTIONS, INC. a Washington Corporation; METRICS DIRECT, KEITH SMITH, DANIEL TODD, KENNETH SMITH and DOES 1 through 50, Inclusive,

Defendants.

Case No. 2:07-CV-01167-FCD-EFB

**DEFENDANTS' OBJECTIONS TO STATUS (PRETRIAL SCHEDULING) ORDER**

*[Declarations of Gregory S. Korman and Kristin L. Holland in support concurrently filed]*



Dockets.Justia.com

**DEFENDANTS' OBJECTIONS TO STATUS (PRETRIAL SCHEDULING) ORDER**

Pursuant to section XI of the Court's Status (Pretrial Scheduling) Order ("Status Order"), dated September 27, 2007, defendants Zango, Inc., 180solutions, Inc. (n/k/a Zango, Inc.), MetricsDirect (n/k/a Zango Ad Services), Keith Smith, Daniel Todd and Kenneth Smith ("Defendants"), through counsel, object to the pre-certification discovery cut-off date set in the Status Order for the reasons set forth as follows:

## I. SUMMARY OF RELIEF SOUGHT.

Defendants respectfully request that the Court modify its Status Order to include an order compelling Plaintiff to preserve and produce for inspection and forensic imaging her computer(s) and other electronic storage media within ten days. In the alternative, Defendants ask the Court to stay or continue the pre-certification discovery cut-off to allow Defendants fourteen weeks from the date Plaintiff produces her computer equipment to conduct such discovery.

The threshold inquiry in this case is whether Defendants' software resides, or has ever resided, on Plaintiff's computer. If Defendants' software was never loaded onto Plaintiff's computer, then her personal and representative claims fail. The threshold, dispositive question can be answered quickly, easily and inexpensively by forensically imaging and inspecting Plaintiff's hard drive(s). Because completing this simple process has the potential to completely avoid the extraordinary expense associated with class action litigation, it should be performed immediately.

Plaintiff's counsel verbally agreed more than two months ago to produce Plaintiff's relevant hard drive(s). Counsel has since reneged on that agreement and, until notified that Defendants would bring this key issue to the Court's attention, refused even to respond to defense counsel's numerous written communications on the subject. Defendants' contributions to the Joint Status Report, including the proposed dates and deadlines, were premised on the understanding that Plaintiff would promptly produce her computer(s) as agreed. She has failed to do so.[1]

[1] Although they were due on August 31, 2007, Plaintiff also failed to serve initial disclosures under Rule 26 of the Rules of Civil Procedure until October 5, 2007, after Defendants advised that they would bring this failure to the Court's attention as well. The disclosures are woefully inadequate for someone purporting to represent a class. Most tellingly, Plaintiff fails even to identify her computers or hard drives as documents upon which she intends to rely.

After Defendants' counsel gave notice of this filing, and their concern that the key evidence in this matter may have been tampered with and therefore spoliated, Plaintiff's counsel finally responded (albeit a week later). Rather than provide reassurances to allay Defendants' expressed concern, however, Plaintiff's counsel offered, for the first time, even more alarming information. Counsel advised that the Plaintiff's hard drive(s) had not been kept in Plaintiff's possession and control but, rather, were first given to Plaintiff's "friend" and then to Plaintiff's own "technician," apparently so this unnamed "technician" could copy the "offending software on the hard drive." Putting aside the fact that Defendants are entitled to proper mirror images, prepared by competent professionals, of all the contents of Plaintiff's hard drive(s) and not just those bits and pieces Plaintiff would like to produce, Plaintiff's cavalier approach to evidence preservation and chain of custody requires immediate judicial intervention. The Court should modify its Status Order to require preservation and production of Plaintiff's hard drives and other computer equipment within ten (10) days.

Under the circumstances as described herein, the pre-certification discovery cut-off date does not provide Defendants with enough time to formally demand the drive(s), compel their production and obtain and image them before December 2007. This timing problem arises directly from Plaintiff's counsel's own broken promises to produce the hard drive(s) and Defendants' then-reasonable reliance upon those promises. If the requested relief is not granted, under the currently-set schedule, Defendants would be left with just one month to complete pre-certification discovery after obtaining Plaintiff's computer(s). If Plaintiff is not ordered to immediately produce her computer(s), the pre-certification discovery cut-off should be stayed or continued until such time as Defendants can obtain Plaintiff's hard drive(s) through regular discovery channels.

## II. SALIENT FACTS.

### A. Plaintiff's Allegations.

Plaintiff contends that Defendants unlawfully install unwanted software code – which Plaintiff calls "spyware" – onto the general public's computers without consent. Plaintiff alleges, as she must to proceed with this action, that Defendants' software was installed on her computer and

caused the harm of which she complains. Plaintiff has styled her complaint as a class action and purports to be competent to represent a class. She seeks injunctive relief and compensatory and punitive damages.

**B. Defendants' Business.**

Defendants do not covertly install software on anyone's computer. Rather, Defendants make online entertainment content – such as videos, games and screensavers – available to the public to enjoy, free of charge, in exchange for a customer's express and informed permission to download Defendants' "ad-serving" software. The ad-serving software downloaded by a consenting consumer (not silently or covertly by Defendants) delivers targeted advertisements for products and services that are likely to be of interest to a particular customer based on what the customer is searching or shopping for online. The customer is free to remove the ad-serving software at any time using the standard Add or Remove Programs function of the Windows operating system.

**C. Plaintiff's Hard Drive(s) and Other Computer Equipment Are *The* Fundamental Evidence In This Case.**

Because Defendants' software does not possess the malicious attributes alleged by Plaintiff, nor is it Defendants' business practice to silently or surreptitiously place that software on any computer, Defendants question whether their software currently resides, or has ever resided, on Plaintiff's computer, *i.e.*, whether Plaintiff's alleged harm is truly attributable to Defendants' software or, instead, from software from some other person or entity. This question can be answered quickly, inexpensively and certainly with one simple step – forensic imaging and inspection of Plaintiff's hard drive.

By asserting class allegations in the broadest manner possible, this litigation has the potential to impose the maximum possible litigation burden and expense on Defendants and this Court. If Defendants' software does not even reside on Plaintiff's hard drive, however, that potential burden and expense – and, indeed, this case – disappears. Put another way, this action need not, and cannot, proceed unless Defendants' software is located on Plaintiff's hard drive. For this reason, imaging

and inspection of Plaintiff's hard drive(s) should occur before any further potentially unnecessary expense is incurred by either side.

### D. Plaintiff Rejects Or Ignores Defendants' Reasonable Attempts To Obtain And Image Plaintiff's Hard Drive(s).

Because of the manifest evidentiary significance of Plaintiff's hard drive(s), Defendants have made every effort to ensure that all data it/they contains is preserved. On June 6, 2007, Defendants' counsel sent a data preservation letter demanding that Plaintiff preserve her hard drive, all electronically stored information on that hard drive, and any other evidence relating to Plaintiff's computer(s).[2] Defense counsel's June 6 letter requested an immediate response confirming that Plaintiff would adhere to her obligation to preserve evidence. Plaintiff's counsel declined to respond to that correspondence. (Declaration of Gregory S. Korman ("Korman Decl.") ¶ 3, Exh. A.)

On June 22, 2007, Defendants' counsel sent another letter to Plaintiff's counsel requesting confirmation that Plaintiff was preserving the data contained on her hard drive and other media. Plaintiff's counsel declined to respond to that correspondence. (Korman Decl. ¶ 4, Exh. B.)

Pursuant to the Court's Order Requiring Status Report, the parties' Joint Status Report was due August 15, 2007. In mid-July, approximately four weeks before the Joint Status Report was due, defense counsel initiated the process by contacting Plaintiff's counsel by telephone to confer about the Report. During that initial call, defense counsel proposed an initial 60-day discovery phase during which the parties would focus on imaging and inspecting Plaintiff's hard drive(s) to determine whether Defendants' software ever resided on Plaintiff's computer. Defendants' counsel explained that it benefited Defendants by potentially avoiding unnecessary litigation expense and it benefited Plaintiff's counsel by ensuring compliance with her obligations under Rule 11 of the Federal Rules of Civil Procedure. During that conversation, Plaintiff's counsel orally agreed to that proposed initial phase of discovery. After defendants' counsel proposed that the parties use a nationally-known forensic computer consulting firm such as Kroll Ontrack or AON (which has

---

[2] Plaintiff filed this action in state court in November 2006, but the complaint was not validly served until May 17, 2007. Defendants removed to this Court on June 15, 2007.

offices located locally), counsel agreed to use AON as the consultant that would image the Plaintiff's equipment. (Korman Decl. ¶ 5.)

On August 5, 2007, Plaintiff's counsel e-mailed a draft of the Joint Status Report to defense counsel.[3] (Korman Decl. ¶ 6, Exh. C.) Over the next two days, Defendants' counsel substantially revised Plaintiff's draft of the Report. These revisions included insertion of the then agreed-upon concept of the initial 60-day phase for inspection of Plaintiff's hard drive, which Plaintiff had omitted from her first draft. Defense counsel e-mailed the revised draft on August 8, 2007, seven days before the Report was due to be filed. (Korman Decl. ¶ 7, Exh. D.)

Plaintiff's counsel did not respond in any way for the rest of the week. On the morning of August 13, 2007, defense counsel sent Plaintiff's counsel an e-mail reattaching the revisions and soliciting a telephone call to discuss them. Plaintiff's counsel responded that she would be available for a call the following morning. (Korman Decl. ¶ 8.)

On August 14, 2007, Defendants' counsel initiated the call expecting to discuss revisions. Plaintiff's counsel had not yet reviewed Defendants' revisions, and reviewed them on the phone. Plaintiff's counsel stated that she agreed to all the terms except for the 60-day initial discovery phase. When defense counsel reminded Plaintiff's counsel that she had already agreed to this concept, she denied any such agreement. After further discussion, Plaintiff's counsel stated that she agreed that inspecting the computers should be the first step in the litigation, but did not want to be bound by a Court order. (Korman Decl. ¶ 9.)

Plaintiff's counsel's change of position on this issue required further revisions to the Report, which Defendants' counsel made and forwarded approximately an hour later. (Korman Decl. ¶ 10, Exh. E.) Despite written inquiries, Plaintiff's counsel did not respond to Defendants' revisions for the rest of the day on August 14. (Korman Decl. ¶¶ 12, Exhs. F-G.)

---

[3] During the initial telephone call, defense counsel offered to prepare an initial draft of the Report. Due to a jury trial in the Central District that ended on August 3, 2007, defense counsel had not circulated a draft by August 5, 2007, and Plaintiff's counsel prepared and sent the initial draft on that date. (Korman Decl. ¶ 6.)

At 10:00 a.m. on August 15, 2007, the date the Joint Report was due, Plaintiff's counsel still had not responded. Defense counsel sent another e-mail requesting that Plaintiff's counsel cooperate in the process. She did not respond. (Korman Decl. ¶ 13, Exh. H.) At 11:00 a.m., defense counsel called Plaintiff's counsel's office and left a message with receptionist. (Korman Decl. ¶ 14.) At 1:00 p.m., defense counsel sent another e-mail informing Plaintiff's counsel that Defendants would file a unilateral report unless Plaintiff forwarded revisions by 4:30 p.m. (Korman Decl. ¶ 15, Exh. I.) Although Plaintiff's counsel ignored this e-mail as well, at exactly 4:30 p.m., Plaintiff's counsel sent to defense counsel via e-mail a substantially revised report containing typographical and grammatical errors. (Korman Decl. ¶ 16, Exh. J.) Defense counsel immediately offered to revise the errors, but received no response. Consequently, the Report was filed with Plaintiff's errors. (Korman Decl. ¶ 17, Exh. K.)[4]

On August 29, 2007, defense counsel sent Plaintiff's counsel an e-mail attempting to schedule pick-up of Plaintiff's computer(s) by third-party forensic consultant AON. Plaintiff's counsel ignored that e-mail. (Korman Decl. ¶ 19, Exh. M.)

Pursuant to the Joint Status Report, the parties agreed to produce their initial disclosures under Rule 26 no later than by August 31, 2007. Defendants served initial disclosures on August 30, 2007. (Korman Decl. ¶ 20.)

On September 13, 2007, Defendants' counsel sent another letter again attempting to arrange for forensic imaging of Plaintiff's hard drive(s). Plaintiff's counsel ignored that letter as well. (Korman Decl. ¶ 21, Exh. N.)

On September 27, 2007, the Court issued its Status Order. That order sets the pre-certification discovery cut-off on January 9, 2007. The dates agreed upon by Defendants in the Joint Status Report were premised on the understanding that Plaintiff would produce her hard drive(s) for imaging in a reasonably prompt fashion as counsel discussed. Because Plaintiff's counsel has

---

[4] Later that evening, well after the Joint Report was filed, Plaintiff's counsel sent contradictory e-mails. The first apologized for Plaintiff's counsel's delay in responding. The second blamed defense counsel for same. (Korman Decl. ¶ 18, Exh. L.)

declined to produce the drive(s) or cooperate to accomplish their production, the pre-certification cut-off is just over three months away and Defendants have no way of knowing if their software ever resided on Plaintiff's computer. (Korman Decl. ¶ 22.)

On September 28, 2007, defense counsel sent another letter to Plaintiff's counsel again requesting assistance in coordinating production of Plaintiff's computers and demanding Plaintiff's initial disclosures, which were by then a month overdue.[5] Defendants' counsel specifically notified Plaintiff's counsel that if she failed to respond by October 2, 2007, Defendants would raise this issue with the Court. Plaintiff's counsel did not respond by October 2, 2007, and defense counsel began preparing these Objections. (Korman Decl. ¶ 23, Exh. O.)

On Friday, October 5, 2007, Plaintiff's counsel sent a one-paragraph letter characterizing her failure to respond to months of correspondence as "delay" and attributing it to "other cases which happened to have priority." Plaintiff's counsel's letter also stated that it had taken time for her to locate a "technician."[6] (Korman Decl. ¶ 24.)

At about the same time, Plaintiff finally served her inadequate disclosures (1½ pages in length, total) on October 5, 2007, only after having been advised by defense counsel that the failure to serve disclosures or to communicate about them would necessitate Court involvement. (Korman Decl. ¶ 25.)

Defendants' counsel responded in writing immediately, demanding that Plaintiff cease and desist from engaging in any unilateral activity that might further spoliate the hard drive(s). Defendants' counsel requested confirmation that Plaintiff's counsel would not take any further action relating to the drive(s) and solicited a date upon which a third-party service could inspect and image the drive(s). Plaintiff's counsel declined to respond in writing, but called defense counsel after 6:00 p.m. on Friday, October 5. Plaintiff's counsel stated that the hard drive had originally

---

[5] Defendants' counsel transmitted the letter by e-mail and regular mail. Fax transmission was attempted five times, but Plaintiff's counsel's fax machine was apparently non-functioning.

[6] Like much of Plaintiff's counsel's conduct, this was strange given that counsel had agreed to use AON and defense counsel had agreed to pay for the imaging service to be provided.

traveled from the Plaintiff to a "friend," who was going to do something to it, but did not. It was then given to Plaintiff's counsel, who provided it to a computer technician, who has not yet done anything with it. Although Plaintiff's counsel again represented that she would produce the drives, Defendants' counsel requested confirmation in writing of this fact. To date, defense counsel has received no such confirmation. (Declaration of Kristin L. Holland ("Holland Decl.") ¶¶ 2-6.)

## III. THE COURT SHOULD ORDER PRESERVATION AND PRODUCTION OF PLAINTIFF'S HARD DRIVE(S) WITHIN 10 DAYS.

The question of whether Defendants' software resides, or has ever resided, on Plaintiff's computer(s) is dispositive.[7] Without evidence of Defendants' software on her computer, Plaintiff's personal and representative claims fail. Forensic imaging and inspection procedures allow this determination to be made quickly, efficiently and easily provided that Plaintiff has properly preserved and timely produces her computer equipment, something she and her counsel have been unusually reluctant to do.

The balance of equities sharply favors granting Defendants' request. The expense associated with developing and defending a class action such as this one, even at the pre-certification stage, is extraordinary. On the other hand, producing evidence to which Defendants are entitled, which Plaintiff's counsel has agreed to produce, and which, under Rule 11, Plaintiff's counsel must already possess, causes absolutely no prejudice to Plaintiff. Under these circumstances, this critical threshold inquiry should be resolved at the outset.

Moreover, the importance of this issue has been borne out by Defendants' experience. Defendants have been the victims of frivolous litigation in the past. Simply inspecting the computers of former putative class representatives in a federal court action in Chicago conclusively proved that Defendants' software never resided on their computers. Plaintiff's counsel's reluctance to produce (nor, for months, even to acknowledge Defendants' requests that she produce) Plaintiff's

---

[7] Defendants identify Plaintiff's computer hardware as "computer(s)" or "hard drive(s)" because Plaintiff declined to identify her computers in her untimely and inadequate initial disclosures. Consequently, Defendants have no way of knowing how many media storage devices Plaintiff owns or claims were damaged by Defendants' software.

hard drive(s) here suggests a similar outcome. At a minimum, it bolsters Defendants' position that this question should be answered before litigation expenses mount further.

Defendants recognize that compelling production of a party's hard drive(s) would ordinarily constitute a discovery issue. Here, however, Defendants urge the Court to treat this question as substantive, particularly given the context as explained herein and the upcoming discovery deadlines to which Defendants agreed only because of Plaintiff's counsel's agreement to produce the drive(s) for inspection and imaging. The Court and the parties have a unique opportunity to potentially resolve an entire action at the outset of the case simply by requiring Plaintiff to promptly produce her hard drive(s) – a logical, threshold step that even Plaintiff's counsel agreed to, initially. Given the history of unreliability detailed above, however, judicial intervention is indispensable.[8] Development of this action, even through limited pre-certification discovery, will be time-consuming and expensive, and will almost certainly require appearances before the Magistrate. All of this is avoidable. The Court should exercise its broad discretion and compel production of Plaintiff's hard drives within 10 days. At a minimum, the Court should order Plaintiff not to use, move, access or allow anyone else to use, move or access any computer equipment Plaintiff that is relevant to any claims or defenses in this case.[9]

---

[8] Defendants have done everything reasonably possible to make production of these drives as convenient as possible for Plaintiff. Defense counsel has offered to coordinate all logistics, including retaining a mutually third-party forensic computer expert, arranging for the expert to pick up Plaintiff's equipment at a location of her designation and *paying for the cost of the imaging*. All Plaintiff's counsel has had to do for the past two months is provide a date and a location.

[9] Given the fact that Plaintiff gave at least one hard drive to her "friend" to "do something" with and that Plaintiff's counsel gave the same drive to an unidentified "technician" to partially access and partially copy, the integrity of the critical evidence in the case is uncertain. A preservation order should issue.

## IV. ALTERNATIVELY, THE COURT SHOULD STAY OR CONTINUE PRE-CERTIFICATION DISCOVERY DEADLINES UNTIL DEFENDANTS OBTAIN THE DRIVE(S).

If the Court is disinclined to compel production, Defendants respectfully request that the Status Order be modified to stay or continue pre-certification discovery deadlines until such time as Defendants obtain images of Plaintiff's computer equipment and have a reasonable period of time (approximately two weeks) to inspect those images. The dates to which Defendants agreed in the Joint Pretrial Report were based on the then-reasonable assumption that Plaintiff's counsel would honor her verbal commitment to produce the drive(s) and to otherwise comply with her discovery obligations. Kindly put, she has not done so.

The current schedule, if left unmodified, is not workable. Defendants would have to immediately serve written discovery hindered by inadequate initial disclosures from Plaintiff (just received October 5), thus prejudicing Defendants by requiring them to use their limited number of written discovery requests on information that should have been voluntarily provided. Defendants will then lose 30 days waiting for responses, putting the parties into November. Plaintiff's responses are expected to be inadequate, which will necessitate a meet and confer under Rule 37-251 (with which Plaintiff's cooperation is dubious) and a motion on regular notice. Assuming Defendants spend only a week attempting to obtain Plaintiff's counsel's cooperation, Defendants cannot reasonably expect an order compelling production prior to mid-November, nor actual production and inspection until late-November. Thus, unless the relief requested is granted and the dates are modified, the parties will not even know if Defendants' software ever resided on Plaintiff's computers until just over a month remains to complete pre-certification discovery and any associated motions.

Even under the optimistic timetable above, there is simply insufficient time to compel production of the Plaintiff's hard drive(s), and to image and inspect them, without incurring the potentially unnecessary expense of concurrently engaging in general pre-certification discovery.

This scenario does not even consider the burden of responding to any discovery Plaintiff may endeavor to conduct.

At the time the Court signed its Status Order, the parties had approximately fourteen weeks to complete pre-certification discovery. Defendants request that the Court stay or suspend the pre-certification discovery deadline until such time as Plaintiff produces her hard drive(s). Defendants propose advising the Court when this takes place, and setting the pre-certification discovery cut-off on a date fourteen weeks thereafter.

## V. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court modify its Status (Pretrial Scheduling) Order to order preservation and compel production of Plaintiff's hard drive(s) and other media storage devices within ten days. Alternatively, the Court should stay or continue the pre-certification discovery deadline to permit fourteen weeks of discovery from the date Plaintiff ultimately produces her equipment for inspection.

Respectfully submitted,

Dated: October 8, 2007

KATTEN MUCHIN ROSENMAN LLP

By: [signature]
Gregory S. Korman
Attorneys for ZANGO, INC., 180SOLUTIONS, INC. (n/k/a ZANGO, INC.), METRICSDIRECT (n/k/a ZANGO AD SERVICES), KEITH SMITH, DANIEL TODD and KENNETH SMITH